Filed 11/18/25  P. v. Delgado CA4/2

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO


THE PEOPLE,

    Plaintiff and Respondent,

v.

SERGIO ELOY DELGADO,

    Defendant and Appellant.

E085479

(Super.Ct.No. RIF2402103)

OPINION


APPEAL from the Superior Court of Riverside County.  Mark E. Singerton, Judge.

Affirmed.

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

A jury found defendant and appellant Sergio Eloy Delgado guilty of evading a police officer (Veh. Code, § 2800.2, count 1) and driving under the influence of a drug

1

(Veh. Code, § 23152, subd. (f), count 2). The court sentenced defendant to one year four months in prison.

Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436, setting forth a statement of the facts, a statement of the case, and requesting that we independently review the record for error.

We offered defendant the opportunity to file a personal supplemental brief, which he has not done. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

An officer testified that on April 22, 2024, at around 12:22 a.m., he was monitoring traffic on the 91 freeway near Fourteenth Street, when he observed a tractor trailer truck speeding and "weaving back and forth between the high-occupancy vehicle lane and the Number 2 lane in a serpentine manner."

The officer attempted to initiate a traffic stop by activating his "forward-flashing red lights." Defendant continued to drive "in a serpentine manner." The officer activated his emergency lights, which included a blue light, and his siren. Defendant still failed to respond.

The officer notified his dispatcher "and requested additional units and air support." Defendant continued "traveling at a high rate of speed," approximately 70 miles per hour. He would straighten out and then return to weaving back and forth between lanes. In the officer's opinion, "it was something you would see with an impaired driver."

Backup units arrived about 15 minutes after his request, as he was pursuing defendant southbound on the 215. A helicopter also began tracking defendant's vehicle.

Officers deployed a spike strip, which was ineffective. The spike strip shot out behind the truck a minute or two later, striking the officer's vehicle and causing a flat tire, at which point he ended his pursuit.

Another officer who joined the pursuit a few miles south of the San Diego County line testified defendant violated the law by making an unsafe lane change, driving in the fast lane, driving in the HOV lane, and driving "between 70 and 80 miles an hour." The People played dashcam video from the officer's vehicle for the jury.

They laid down multiple spike strips. They eventually laid an effective spike, which deflated and "popped off" one of the truck's tires. There were at least five patrol cars, all of which had their lights on, at the place where the truck eventually stopped.

Defendant exited the vehicle, and officers handcuffed and arrested him. The pursuit ended at approximately 1:30 a.m.

A third officer who joined the pursuit testified he had his lights and sirens on. The People played video from the third officer's dashcam video recording.

The officer took defendant into custody at the Oceanside station at 3:27 a.m. "Upon contacting [defendant], he was very fidgety, he was sweating, kind of rigid, kept mumbling, incoherent. Couldn't make out exactly what he was saying." Defendant's eyes appeared watery. The officer asked defendant if he would perform field sobriety tests; defendant responded by requesting an attorney.

3

A fourth officer testified he "noticed the driver utilizing all traffic lanes, [and] very aggressive driving." Defendant drove "throughout the pursuit, varying speeds, utilizing all lanes, near traffic collisions. Very, very reckless." What stood out to the officer was "the aggressive driving, utilizing all traffic lanes to the motoring public as we were pursuing the subject vehicle, nearly running them off the road, up to and including one of our own patrol cars that was moving into position to set up a spike strip. Those are some of the signs that I was looking at. The speed, the speed for a big rig is 55 and you're upwards of approximately 70 in some situations. Not wanting to stop is another one."

The officer later spoke with defendant. "I observed his muscle tone to be rigid. He was very fidgety. He couldn't keep still, constantly moving his feet, his arms, twisting his body." "I noticed him to be red and flushed and sweating in a controlled environment with air conditioning. I noticed him to be very talkative." "I noticed black marks on his fingers. This is consistent with a foil method of smoking methamphetamines. I noticed bruxism of the teeth. And I noted his breath to be rancid."

The officer offered "both standardized field sobriety tests and a drug recognition evaluation to the subject." Defendant declined to participate.[1]

"At that point of the investigation, I believed the individual to be impaired." He requested that defendant participate in a blood draw. At 8:54 a.m., a phlebotomist conducted a blood draw of defendant.

---

[1] The officer testified on cross-examination that he did not perform field sobriety tests or a drug recognition evaluation both because defendant refused and because the officer believed it would be dangerous to uncuff defendant.

A forensic toxicologist testified that "the typical effects for methamphetamine [include] rapid and disorganized speech, a lack of focus or concentration, a person having difficulty maintaining attention.  They can be scattered with their thoughts or disorganized with their thoughts."  People under the influence of methamphetamine are "unable to sit still, they appear to be fidgety, they constantly are moving their hands, their feet, or they have an uncontrolled movement when trying to sit.  They can also have a lack of balance and coordination or impaired coordination.  But you can also see other items such as clenching of the teeth or their muscle tone becomes very stiff or rigid."  They "may appear to be heavily sweating."  "There is rancid breath."  "There [are] physiological observations of being sweaty and mental observations of the mumbling and spontaneous speech.  There [is] bruxism or . . . teeth clenching."  Black marks on users' fingers are common.  Defendant's blood tested positive for methamphetamine and amphetamines.

Defendant testified that around 10:00 or 11:00 p.m. on April 22, 2023, he was driving his truck to Long Beach when he pulled over on the 405 freeway to help some ladies stopped on the side of the road.  One of the women told him she "was a bit drunk."

A young man exited the vehicle; one of the women screamed, "'Grab your phone.'"  Defendant got scared:  "I was afraid of him doing something to maybe rob me or something."  He returned to his truck and started driving away.

Defendant had his phone, but he did not think that it was charged.  He did not call the police because he usually sees highway patrol on the road and anticipated he could

find help while driving. Defendant "took the 91 Freeway to the 60 and the 215, on the 215." "When I took the 215, I went to the fast lane. And I continued driving and I saw [the officer] on the rearview mirror from far away."

Defendant drove in the manner portrayed by the dashcam videos because he "wanted to draw someone's attention." He saw the patrol car's lights, but he did not pull over because he "wanted them to get closer to me to feel safer." Defendant did not feel his truck drive over any spike strips. When he lost the tire, that's when he felt safe enough to pull over.

Defendant was fidgety because the officers would not let him use the restroom. None of the officers offered him an opportunity to participate in field sobriety tests or a drug recognition evaluation. Defendant did not tell officers he had seen a driver in Long Beach who may have been drunk. He has never smoked methamphetamine.

## II. DISCUSSION

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the record for potential error and find no arguable issues.

### III.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER

Acting P. J.

We concur:

MILLER

J.

MENETREZ

J.